Jennifer R. Bergh, Esq. (Bar No.: 14480)
LAW OFFICES OF MICHELLE GHIDOTTI
8716 Spanish Ridge Ave, #115,
Las Vegas, NV 89148
Tel: (949) 427-2010 Ext. 1009
Fax: (949) 427-2732
jbergh@ghidottilaw.com

Attorneys for Respondent
Bridgecrest Credit Company, LLC, its successors and assigns

UNITED STATES BANKRUPTCY COURT

DISTRICICT OF NEVADA – LAS VEGAS DIVISION

| | |
|---|---|
| In re: <br><br> CRAIG RAYMOND SCHERF and CONNIE MAY SCHERF, | CASE NO.: 18-12417-mkn <br><br> Chapter 13 <br><br> OBJECTION TO CONFIRMATION OF DEBTORS' PLAN <br><br> Hearing Date: July 12, 2018 <br><br> Hearing Time: 1:30 p.m. |

**OBJECTION TO CHAPTER 13 PLAN**

TO THE HONORABLE JUDGE MIKE K. NAKAGAWA, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS, THEIR ATTORNEYS OF RECORD AND THE CHAPTER 13 TRUSTEE, RICK A. YARNALL:

    Bridgecrest Credit Company, LLC, ("**Creditor**"), a secured creditor of the above-named Debtors hereby objects to the confirmation of Debtors' Chapter 13 Plan (the "**Plan**") on the

grounds that the Plan does not comply with the provisions of Chapter 13 of Title 11, United States Code, and with other applicable provisions of said Title 11.

This objecting Creditor holds a purchase money security interest in a 2012 Ford Focus bearing the VIN: 1FAHP3F22CL455417 (the "**Vehicle**").

## I

## STATEMENT OF FACTS

1. On or about March 22, 2016, Connie May Scherf (the "**Debtor**") entered into the Contract with Creditor. The proceeds of the Contract were used to purchase the Vehicle. The Vehicle was purchased for personal use less than 910 days before the Instant Petition was filed and the vehicle is not subject to cram down.

2. The Contract is secured by a Lien on a vehicle described as a 2012 Ford Focus bearing the VIN: 1FAHP3F22CL455417 ("**Vehicle**"). A true and correct copy of the Contract is attached hereto as **Exhibit "A"** and is incorporated herein. A true and correct copy of the Lien and Title Information Report is attached to the Motion as **Exhibit "B".**

3. On April 27, 2018, Debtors, Craig Raymond Scherf and Connie May Scherf filed a Chapter 13 Petition in the District of Nevada, Las Vegas Division, Petition No.: 18-12417 (the "**Instant Petition**").

4. The Debtor's loan is due for the May 21, 2018 payment.

5. The Vehicle was purchased less than 910 days before the Instant Petition was filed.

6. The total owed to Creditor totals no less than $12,211.97 with an interest rate of 24.104%.

7. The Debtor intends to modify Creditor's claim and reduce the interest rate to 5.00%.

///

2

## II

## ARGUMENT

Application of the provisions of *11 United States Code Section 1325* determines when a Plan shall be confirmed by the Court. Based on the foregoing, as more fully detailed below, the Plan cannot be confirmed as proposed.

### A. CREDITOR'S CLAIM IS A 910-DAY CLAIM:

For purposes of paragraph (5), section 506 <u>shall not apply</u> to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor. Pursuant to Section 1325(b)(5), a claim secured by a purchase money security interest in a motor vehicle and incurred within 910 days of the commencement of the bankruptcy case is classified as a 910-day claim. Debtor purchased the Vehicle on March 22, 2016. Debtor filed the Instant Petition on April 27, 2018, 796 days before the Instant Petition was filed. Thus Creditor's Claim is not subject to cram down. The Debtor's Vehicle was purchased for personal use pursuant to the Contract attached as Exhibit A. Therefore, Creditor's Claim is no subject to cram down and Debtor must tender the full balance of the claim to Creditor. The interest rate cannot be modified to 5.00%. Furthermore, the Contract matures on March 21, 2021, thus the entire claim must be paid through the Chapter 13 Plan. Creditor seeks a payment no less than 2% of the total claim per month. Pursuant to the terms of the Contract payments are due monthly in the amount of $477.01 per month.

WHEREFORE, Creditor objects to confirmation of the Plan and requests as follows:

     a.     The Plan be denied confirmation and the case be dismissed.

DATED:  May 29, 2018                THE LAW OFFICES OF MICHELLE GHIDOTTI

                                        By: /s/ Jennifer R. Bergh Esq.
                                             Jennifer R. Bergh, Esq.
                                             Attorney for Creditor Bridgecrest Credit Company, LLC

# EXHIBIT "A"

DATE: 03/22/2016

**CONTRACT FOR SALE AND SECURITY AGREEMENT FOR SALE OF VEHICLE WITH PAYMENT OF SIMPLE INTEREST**

**SECTION A:**

Buyer's Name(s): Connie May Scherf
Name:
Address: 7475 W Charleston Blvd Apt 49
City: Las Vegas     County:
State: NV     Zip: 89117-1426
Bus. Phone:     Res. Phone:

Creditor: DRIVETIME
Address: 1616 S. DECATUR
City: LAS VEGAS     County: CLARK
State: NV     Zip: 89102
Phone:
Stock No.:
Salesman:     Date: 03/22/2016

**SECTION B:     DISCLOSURE MADE IN COMPLIANCE WITH FEDERAL TRUTH IN LENDING ACT.**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. | TOTAL SALES PRICE The total cost of your purchase on credit, including your down payment of $ 400.00 |
|---|---|---|---|---|
| 24.104 % | $ 12,066.78 | $ 16,553.16 | $ 28,619.94 | $ 29,019.94 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 59 | 477.01 | 04/21/2016 |
| 1 | 476.35 | 03/21/2021 |

(e) means an estimate

**INSURANCE AND DEBT CANCELLATION:**
Credit life insurance and credit disability insurance and debt cancellation coverage, which is also know as GAP coverage, are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Term | Signature(s) | |
|---|---|---|---|---|
| Credit Life: | $ N/A | N/A | I want credit life insurance: | N/A |
| Joint Credit Life: | $ N/A | N/A | We want join credit life insurance: | N/A |
| Credit Disability: | $ N/A | N/A | I want credit disability insurance: | N/A |
| Credit Life and Disability: | $ N/A | N/A | I want credit life and disability insurance: | N/A |
| Joint Credit Life and Disability: | $ N/A | N/A | We want joint credit life and single disability insurance: | N/A |
| Debt Cancellation Coverage (GAP Coverage): | $ N/A | N/A | I want debt cancellation coverage (GAP coverage): | N/A |

You may obtain property insurance from anyone you want that is acceptable to the Creditor above. If you get the insurance from the Creditor, you will pay $ N/A    and the term of the insurance will be $ N/A

Security: You are giving a security interest in the goods or property being purchased.

☐ If checked, you are giving a security interest in _____
**Late Charge:** If a payment is more than 10 days late, you will be charged $15 or 8 percent of the payment, whichever is less.
**Prepayment:** If you pay off early, you will not have to pay a penalty.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and penalties.

Additional Terms and Conditions: The additional terms and conditions set forth on the reverse side hereof are a part of this contract and incorporated herein by reference.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Page 1 of 6

**SECTION D: VEHICLE RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT.**

This contract is made the 22nd (day) of March (month) of 2016 (year) between you, the Buyer(s) shown above, and us, the Seller shown as Creditor above. Having been quoted a cash price and a credit price and having chosen to pay the credit price (shown as the Total Sales Price in Section B above), you agree to buy and we agree to sell, subject to all the terms of this contract, the following described vehicle, accessories and equipment (all of which are referred to in this contract as "Collateral"):

New or Used: <u>USED</u>   Year and Make: <u>2012 Ford</u>
Series: <u>Focus</u>   Body Style: <u>SE 4dr Sedan</u>
If Truck, ton capacity: _____
Manufacturer's Serial Number: <u>1FAHP3F22CL455417</u>
Use for which purchased: (X) Personal  ( ) Business  ( ) Agriculture
INCLUDING:
( ) Sun/Moon Roof  ( ) Air Conditioning  ( ) Automatic Transmission
( ) Power Steering  ( ) Power Door Locks  ( ) Power Seats
( ) Power Windows  ( ) Tilt Wheel  ( ) Vinyl Top
( ) Cassette  ( ) Cruise Control  ( ) AM/FM Stereo
( ) Compact Disc Player _____ Color <u>GRAY</u> ___/___
Tires _____   Lic. No. _____

You, severally and jointly, promise to pay to us the Total of Payments (shown in Section B above) according to the Payment Schedule (also shown in Section B above), until paid in full, together with interest after maturity at the Annual Percentage Rate disclosed above.

To secure such payment, you grant to us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions to and proceeds of the Collateral. Insurance in which we or our assignee are named as beneficiary or loss payee, including any proceeds of such insurance or refunds of unearned premiums, or both, are assigned as additional security for this obligation and any other obligation created in connection with this sale. We, our successors and assigns, hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

Address where Collateral will be located:

| Street | City |
|---|---|
| County | State |

Your address after receipt of possession of Collateral:

| Street | City |
|---|---|
| County | State |

Notice of Rescission Rights(Option to Cancel): If the Buyer signs here, the notice of rescission rights set forth below is applicable to this contract.

Buyer's signature _____

Co-Buyer's signature _____

STATE DISCLOSURE REQUIREMENTS: The provision of Section B and Section C are incorporated into this agreement for the purpose of state disclosure requirements.

OPTION: _____ You pay no Finance Charge if the Total Amount Financed, item No. 12, Section C, is paid in full on or before _____, _____

SELLER's INITIALS _____

**SECTION C: ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---:|
| 1. Vehicle Selling Price | $11,295.00 |
| Plus: Documentary Fee | $299.00 |
| (This charge represents costs and profit to the dealer for items such as inspecting, cleaning, adjusting vehicles, and preparing documents related to the sale.) | |
| Plus: Emissions Inspection Fee | $0.00 |
| Plus: Other ( N/A ) | N/A |
| Plus: Other ( N/A ) | N/A |
| Total Taxable Selling Price | $11594 |
| 2. Total Sales Tax | $944.91 |
| 3. Amounts Paid to Public Officials | |
| a. Titling Fee | $29.25 |
| b. Registration Fee | $0.00 |
| c. Other _____ | N/A |
| Total Official Fees (Add 3a through 3c) | $29.25 |
| 4. Optional, nontaxable, fees or charges | |
| DriveCare Powertrain | $2,895.00 |
| GAP Coverage | $795.00 |
| MotionGPS plus | $695.00 |
| Total Optional, nontaxable, fees or charges (Add 4a through 4d) | $4,385.00 |
| 5. TOTAL CASH SALES PRICE | $16953.16 |
| 6. Gross Trade In Allowance | $0 |

| Year  Make  Model | Model |
|---|---:|
| Less Prior Credit or Lease Balance | $0.00 |
| Net Trade in Allowance (If negative, enter 0 and see line 11a) | $0.00 |
| 7. Down Payment (Other than Net Trade-In Allowance): | $0.00 |
| a. Trade-In Sales Tax Credit | $400 |
| b. Cash | N/A |
| c. Manufacturer's Rebate | N/A |
| d. Deferred Down Payment | N/A |
| e. Other ( N/A ) | |
| Down Payment (Add 7a through 7e) | $400.00 |
| 8. TOTAL DOWN PAYMENT AND NET TRADE-IN ALLOWANCE (Add 6 and 7) | $400.00 |
| 9. UNPAID BALANCE OF CASH SALES PRICE (Subtract 8 from 5) | $16,553.16 |
| 10. Plus Optional Insurance and Debt Cancellation Charges* | |
| a. Credit Life Insurance Premium | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| b. Credit Disability Insurance Premium | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| c. Debt Cancellation Coverage (GAP Coverage) | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| d. Other Insurance | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| Total Optional Insurance and Debt Cancellation Charges (Add 10a through 10d) | N/A |
| 11. Other Amounts Financed* | |
| a. ( N/A ) | |
| Paid to ( N/A ) | |
| Total Other Amounts Financed | N/A |
| 12. Total Amount Financed (Add 9, 10 and 11) | $16,553.16 |

* Seller may retain or receive a portion of this amount.

**SECTION E:**

☐ If checked, you agree to use electronic records and electronic signatures to document this contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local law and regulations.

UPON ENTERING INTO THIS CONTRACT, YOU WILL RECEIVE A PAPER COPY OF THE ORIGINAL CONTRACT ELECTRONICALLY SIGNED AND COMPLETE WITH ALL TERMS, CONDITIONS AND DISCLOSURES TO TAKE WITH YOU.

## NOTICE TO BUYER

Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to a completed copy of this agreement. If you pay the amount due before the scheduled date of maturity of the indebtedness and you are not in default in the terms of the contract for more than 2 months, you are entitled to a refund of the unearned portion of the finance charge. If you fail to perform your obligations under this agreement, the vehicle may be repossessed and you may be liable for the unpaid

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle above, federal regulation may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

The text of the preceding two paragraphs is set forth below in Spanish:

Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo arriba, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.

LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTARIA EN EL CONTRATO DE VENTA.

BUYER AND CO-BUYER ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED-IN COPY OF THIS CONTRACT AND THE ABOVE DISCLOSURE AT THE TIME OF SIGNING.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS OTHERWISE INDICATED IN SECTION C ABOVE.

Buyer: _[signature]_ Date: 03/22/2016   Co-Buyer: _____ Date: 03/22/2016

Creditor: DRIVETIME - DECATUR   Date: 03/22/2016

By: _[signature]_

## (CONT'D) ADDITIONAL TERMS AND CONDITIONS

**Simple Interest Contract:** This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule set forth in the disclosures on page 1 of 5 may differ. The final payment may differ depending upon the dates payments are received and events which occur after this contract is made. For example, early payments will have the effect of reducing your final payment, while late payments will cause your final payment to be higher. Your promise requires you to pay the final payment on the date due, which payment will be equal to all unpaid sums due under this contract, even if the amount of the final payment differs from the amount of final payment disclosed on the reverse side hereof.

**Default:** If you default in the performance of any of the terms and conditions of this agreement, including, but not limited to, making of any payment later than 30 days of when due, or become insolvent, or file any proceeding under the U.S. Bankruptcy Code, or upon your demise, or if the vehicle is damaged or destroyed, we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against you for all unpaid sums, and (3) take immediate possession of the vehicle. Upon taking possession of the vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it at public or private sale. We may purchase the vehicle at any sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the property, and the remainder will be applied to the unpaid sums owing under this contract. Attorney's fees and court costs are allowed too. If there is any money left over (surplus) it will be paid to you. If a balance still remains owing, you promise to pay that balance upon demand. If you default or breach this agreement you agree to pay finance charges at the Annual Percentage Rate shown on the reverse side until all sums owing us are paid in full. Our remedies are cumulative and taking of any action is not a waiver and does not prohibit us from pursuing any other remedy. You promise to pay reasonable collection costs and expenses, including attorney's fees, if you default under this agreement. If suit is filed, you agree that attorney's fees and costs will be awarded to the prevailing party. If the vehicle is repossessed we may store personal property found in the vehicle for your account and at your expense and if you do not claim the property within 90 days after the repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you.

Page 3 of 6

Nevada Retail Installment Contract 4/11/2013

**Delinquency and Collection Charges:** You will pay a delinquency charge equal to the lesser of $15 or 8 percent of any installment in default for more than 10 days. If you default as described in the preceding paragraph and we refer this contract for collection to an attorney who is not our salaried employee or a salaried employee of the holder of this contract, you will pay reasonable attorney's fees plus court costs, and

**Demand for Full Payment and Additional Remedies on Default:** If you default under this contract, at the time of the default or any time after default (if the default has not been cured previously) we may require immediate payment of the unpaid portion of the amount you owe us. If there is any money left over (surplus) it will be paid to you. On any default, we will have all the remedies of a secured party under the Uniform Commercial Code. If the cash price on the reverse hereof is $1,000 or less, you will not be personally liable for any deficiency incurred in a sale after repossession.

**Ownership of the Collateral:** You represent that there are no liens, claims or encumbrances on the Collateral except for the security interest you grant by this contract to us and you further represent that you have executed no financing statement covering the Collateral except for one

**Location and Use of Collateral:** You agree to notify us in writing of any change of your address or of any change in the location of the Collateral. Unless you first have received our written consent, you may not take the Collateral out of the State shown in Section D in the section entitled "Address Where Collateral Will Be Located" and you may not sell, lease or otherwise dispose of the Collateral or any part of it by any means. You will comply with all laws, ordinances, regulations and orders relating to the Collateral. You will keep the Collateral in good condition and will not alter or substantially modify it or conceal it. You will not allow any other security interest on the Collateral besides the security interest granted to us under this contract.

**Inspection of the Collateral:** We may inspect the Collateral at any reasonable time.

**Taxes:** You are responsible for and will pay when due all taxes and assessments levied on the Collateral. If you fail to do so, we may pay any such tax or assessment on your behalf. An amount equal to that which we paid will be added to the Total of Payments then owing and you will be charged a finance charge on the amount we paid at the highest lawful contract rate.

**Property Insurance:** You will keep the Collateral insured against such risks and in such amount as we may from time to time require with an insurer that you choose and we approve. As indicated in Section B, if you choose, we will obtain property insurance for you at the premium shown. Whether the insurance is provided by you or by us, you will pay all premiums for this insurance when the premiums are due and payable. If you provide property insurance, you will deliver the policies to us as additional security and will provide us with receipts showing payment of premiums. If you do not obtain the insurance or pay the premiums, we may do so for you. If we do this, an amount equal to that which we have paid for the premiums will be added to the Total of Payments then owing and a finance charge at the highest lawful rate will be charged on that amount. If we do not obtain the insurance, none of our other rights and remedies will be prejudiced. You agree that any proceeds from insurance are to be used to either repair or replace the vehicle. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged or destroyed. If you default (as described above), we may cancel the insurance and credit any insurance premium refunds to the unpaid balance of this contract.

**LIABILITY INSURANCE IS NOT REQUIRED BY THIS CONTRACT. YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM LIABILITY INSURANCE IS TO BE OBTAINED.**

**Information to Insurance Company or Agent:** You give your permission to furnish any information about the Collateral or any information about insurance policies on the Collateral to an insurance agent or company.

**Credit Life Insurance, Credit Disability Insurance and Debt Cancellation Coverage (GAP Coverage):** If you indicated in Section B that you want optional credit life insurance, credit disability insurance or debt cancellation coverage (GAP coverage), or any combination thereof, you agree to pay for such insurance at the premium shown in Section B.

NO WARRANTIES: SELLER MAKES NO REPRESENTATIONS, PROMISES OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF THE COLLATERAL OR WHETHER THE COLLATERAL IS SUITABLE OR FIT FOR THE PARTICULAR PURPOSE INTENDED UNLESS SELLER HAS DONE SO IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY US AS ORIGINAL SELLER OF THE COLLATERAL. HOWEVER, IF SELLER MAKES AN EXPRESS WARRANTY IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY SELLER OR, WITHIN 90 DAYS AFTER THE DATE OF THIS CONTRACT, ENTERS INTO A SERVICE CONTRACT WITH THE BUYER THAT APPLIES TO THE COLLATERAL, THE EXCLUSION OF IMPLIED WARRANTIES SET FORTH IN THIS PARAGRAPH DOES NOT EXCLUDE ANY IMPLIED WARRANTIES THAT MAY EXIST WITH RESPECT TO THE COLLATERAL DURING THE TERM OF THE CONTRACT OR AGREEMENT IN WHICH THE EXPRESS WARRANTY IS MADE

**Notices:** Any notice we have to give you pursuant to the Uniform Commercial Code will be reasonable if we send it to your address shown in Section D in the section entitled "Your Address After Receipt of Possession of Collateral" at least 5 days before the event with respect to which notice is required.

**Time is of the Essence:** You understand that all payments that are required must be made on the day due.

**Exercising Our Rights:** We can, without notice, delay enforcing our rights or exercise only part of them, without losing them, or waive a right we have to one Buyer without waiving it as to the other(s).

**Meaning of Words:** In this contract the words "you" and "your" means each and all those who sign this contract as Buyers or Co-Buyers, and their heirs, executors, administrators, successors and assigns. The words "we," "us" and "ours" means the Creditor shown on the reverse Section A, and if this contract is assigned, its successors and assigns and any other holder of this contract.

**Governing Law:** This contract has been delivered in the State of Creditor's place of business and will be governed by the laws of that State and applicable federal law.

**Invalidity:** Wherever possible each provision of this contract shall be interpreted so that it is valid under applicable law, but if any provision prohibited or invalid, the remaining provisions of this contract will continue to be valid.

**Notice of Rescission Rights:** The provisions of this paragraph only apply if you have signed the notice of rescission rights on the face of the contract. (1) You agree to furnish the Seller any documentation necessary to verify information contained in your credit application. (2) You acknowledge that it may take a few days for the Seller to verify your credit and assign the contract. In consideration of the Seller agreeing to deliver the vehicle, you agree that if the Seller is unable to assign the contract to a Financial Institution with whom the Seller regularly does business pursuant to terms of assignment acceptable to the Seller, the Seller may elect to rescind the contract. (3) If the Seller elects to rescind the contract, the Seller shall, within 15 days after the date of the contract, give you notice of the rescission. Such notice shall be deemed given upon deposit of a written notice in the United States mail directed to you at the address you stated in the contract or upon any other manner in which actual notice is given to you. Upon receipt of such notice, you shall immediately return the vehicle to the Seller in the same condition as when sold, reasonable wear and tear excepted, and the contract shall be deemed rescinded. The Seller agrees, upon rescission of the contract, to restore to you all consideration received in connection with the contract, including any trade-in vehicle. (4) If the vehicle is not immediately returned to the Seller after giving notice of the Seller's election to rescind the contract, you are liable to the Seller for all expenses incurred by the Seller in obtaining possession of the vehicle, including attorney's fees, and the Seller has the right to repossess the vehicle as permitted by law. (5) While the vehicle is in your possession, all terms of the contract, including those related to the use of the vehicle and insurance for the vehicle, are in force and all risk of loss or damage to the vehicle must be assumed by you. You shall immediately pay all reasonable repair costs related to any damage to the vehicle while it is in your possession or under your control and until the vehicle is returned to the Seller.

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on the reverse side, federal regulation may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

*******************************************************************

**Assignment:** Seller may transfer this contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. The Seller may assign this contract electronically. Contact DT Acceptance Corporation at PO Box 2997 Phoenix AZ 85062-9917 (888-781-5650) to determine the Assignee finance company this contract was transferred to.

Seller Signs: _____

By: DRIVETIME - DECATUR

Title: Dealer

To induce Assignee to purchase the contract, Seller represents and warrants to Assignee as follows: (a) the contract is genuine and the statements and amounts inserted herein are correct; (b) the contract and security interest arose entirely from the sale of the Collateral or services described in the contract, or both; (c) the down payment, if any be shown on the face hereof, has been received and no part thereof was advanced directly or indirectly by Seller to Buyer; (d) the goods and services have been furnished to the satisfaction of Buyer and all obligations of warranty to Buyer, either express or implied, have been and will continue to be fulfilled by Seller; (e) the Collateral or services, or both, have been sold, provided and delivered to and accepted by Buyer; (f) the security interest granted to Seller in the contract constitutes a valid first lien on the Collateral and has been filed or recorded according to law to preserve the priority of each lien; (g) the Collateral is free and clear of all liens and encumbrances, except the security interest granted by this contract; (h) the full amount of the stated Total of Payments remains unpaid; (i) Seller is the holder of the contract and the security interest in the Collateral free and clear of all liens and encumbrances and Seller has full power and authority to assign the same; (j) the transaction was consummated on the above date set forth in the contract and Buyer did not receive possession of the Collateral prior to the date of consummation; (k) Buyer was furnished a completed copy of the contract prior to consummation; (l) the Collateral is insured with a company acceptable to Assignee against physical damage in addition to such other risks as Assignee requires under an insurance policy acceptable to Assignee; (m) Seller has not knowingly communicated to Assignee incorrect information relating to the Buyer's application or credit statement or knowingly failed to communicate information relating to such application or credit statement; (n) the facts set forth in the contract are true; (o) Buyer has no defense or counterclaim to payment of the obligation evidenced by the contract; (p) Buyer or, if more than one, each is not a minor and has legal capacity to execute this contract and is liable thereon; and (q) Seller has no reason to believe the Buyer has ever violated any laws concerning liquor or narcotics.

In the event any warranty shall be breached or any representation shall be false, Seller shall, upon demand and irrespective of whether the contract is then in default, repurchase the contract from Assignee at a price equal to the unpaid balance of the contract plus accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect on the date of such demand by Assignee, plus any costs or expenses of collection, including attorney's fees, whether incurred by Assignee by suit or on appeal or otherwise. Seller waives all defenses that otherwise might have been available but nothing herein contained shall preclude Assignee from enforcing against Seller any other remedies provided by law for misrepresentation or breach of warranty. In the event of any proceedings commenced by Assignee against Buyer with respect to the contract, services or the Collateral, if Buyer asserts as a defense, setoff or counterclaim any act, omission or default by Seller, Seller shall forthwith on demand repurchase the contract for the amount set forth above. The provisions of this assignment shall be binding on the heirs, representatives, successors, and assigns of Seller and shall inure to the benefit of the successors and assigns of Assignee. The above assignment provisions apply and are in addition to any obligations of the Seller as provided in the paragraph below endorsed by Seller.

**RECOURSE:** Seller absolutely and unconditionally guarantees the prompt payment of either the total unpaid amount of the contract and any accrued interest or such other amount agreed to by Seller and Assignee in a separate agreement, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this guaranty or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives any and all defenses arising out of the guarantor relationship.

Seller: _____   Title: _____

By: _____   Date: _____

Page 5 of 6

Nevada Retail Installment Contract 4/11/2013

**2. REPURCHASE:** In the event of default by the Buyer under any of the terms or conditions of the contract, Seller will repossess and repurchase the Collateral, or if the Collateral has already been repossessed, Seller will repurchase the Collateral at the place of repossession or recovery. The Collateral will be repurchased in any event AS IS, at a price equal to the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the default, together with all costs, expenses and reasonable attorney's fees incurred by Assignee in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives all other defenses that might otherwise have been available. At the time of repurchase, Seller shall pay to Assignee the purchase price in cash and Assignee may reassign to Seller without recourse and without warranties, express or implied, all title retention or lien instruments and all contracts or promissory notes which Assignee then holds upon such Collateral.

Seller: _____    Title: _____

By: _____    Date: _____

**3. LIMITED ENDORSEMENT:** In the event of default of Buyer before Buyer shall have paid the first _____ installments under the forgoing contract, Assignee may reassign the contract to Seller and Seller agrees, upon tender of such reassignment and in consideration thereof to pay to Assignee either the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the reassignment, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and Seller waives any other defenses that might otherwise have been available.

Seller: _____    Title: _____

By: _____    Date: _____

**4. WITHOUT RECOURSE:** This assignment shall be without recourse against Seller except for such obligations as are set forth in the assignment above.

Seller: _____    Title: _____

By: _____    Date: _____

Page 6 of 6

Nevada Retail Installment Contract 4/11/2013

# EXHIBIT "B"

# CERTIFICATE OF TITLE

4101 | | | | | E2 - DMV - 0003
---|---|---|---|---|---
VIN | YEAR | MAKE | MODEL | VEHICLE BODY | TITLE NUMBER
1FAHP3F22CL455417 | 2012 | FORD | FOCUS SE | P4D | REDACTED
DATE ISSUED | ODOMETER MILES | ODOMETER BRAND | FUEL TYPE | EMPTY WT | GROSS WT
05/02/2016 | 65084 | ACTUAL MILES | G | 2918 |
PRINT DATE  05/03/2016 | | | | VEHICLE BRANDS | BRAND DATE

**MAIL TO**
DRIVETIME
2025 S DECATUR BLVD
LAS VEGAS NV  89102-5510

**OWNER(S) NAME AND ADDRESS**
SCHERF CONNIE MAY
7475 W CHARLESTON BLVD APT 49
LAS VEGAS NV  89117-1426

**LIENHOLDER NAME AND ADDRESS**
DT ACCEPTANCE CORP
PO BOX 2997
PHOENIX AZ  85062

LIENHOLDER RELEASE — SECURITY INTEREST IN THE VEHICLE DESCRIBED ON THIS TITLE IS HEREBY RELEASED:

_____     _____
SIGNATURE OF AUTHORIZED AGENT                DATE

_____
PRINTED NAME OF AGENT AND COMPANY

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.
The undersigned hereby certifies the vehicle described in this title has been transferred to the following buyer(s):

Printed Full Legal Name of Buyer | Nevada Driver's License or Identification Number | ☐ AND
---|---|---
Printed Full Legal Name of Buyer | Nevada Driver's License or Identification Number | ☐ OR

Street Address | City | State | Zip Code

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following is checked.

ODOMETER READING [NO TENTHS]
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING: ODOMETER DISCREPANCY
☐ Exempt — Model year over 9 years old

Signature of Seller(s)/Agent/Dealership | Printed Name of Seller(s)/Agent/Dealership
I am aware of the above odometer certification made by the seller/agent | Dealer License Number _____ Date of Sale _____

Signature of Buyer | Printed Full Legal Name of Buyer

ACCORDING TO THE RECORDS OF THE DEPARTMENT OF MOTOR VEHICLES, THE PERSON NAMED HEREON IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE, SUBJECT TO LIEN AS SHOWN.

CONTROL NUMBER
REDACTED



VP-2 (Rev 01/ 2016)

(THIS IS NOT A TITLE NUMBER)

ALTERATION OR ERASURE VOIDS THIS TITLE

|   |   |   |
|---|---|---|
| 1 | JENNIFER R. BERGH, ESQ. | |
| 2 | Nevada Bar No.: 14480 | |
|   | THE LAW OFFICES OF MICHELLE GHIDOTTI | |
| 3 | 8716 Spanish Ridge Avenue, #115 | |
|   | Las Vegas, NV 89148 | |
| 4 | Tel: (949) 427-2010 | |
| 5 | Fax:  (949) 427-2732 | |
|   | Email: Jbergh@ghidottilaw.com | |

Attorney for Creditor
Bridgecrest Credit Company, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA – LAS VEGAS DIVISION

| In Re: | ) | CASE NO.:  18-12417-mkn |
|---|---|---|
|   | ) |   |
| CRAIG RAYMOND SCHERF AND CONNIE MAY SCHERF, | ) | CHAPTER 13 |
|   | ) |   |
|   | ) | **CERTIFICATE OF SERVICE** |
| Debtors. | ) |   |
|   | ) |   |
|   | ) |   |
|   | ) |   |
|   | ) |   |
|   | ) |   |
|   | ) |   |

### <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Orange, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is: 1920 Old Tustin Ave., Santa Ana, CA 92705.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

1
CERTIFICATE OF SERVICE

On May 29, 2018 I served the following documents described as:

- **OBJECTION TO CONFIRMATION OF DEBTORS' PLAN**

on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

(Via United States Mail)

| **Debtor** | **Debtor's Counsel** |
|---|---|
| CRAIG RAYMOND SCHERF<br>7075 W. GOWAN RD. #1067<br>LAS VEGAS, NV 89129 | ERIK C SEVERINO<br>LAW OFFICE OF ERIK SEVERINO<br>7251 W. LAKE MEAD BLVD., STE 300<br>LAS VEGAS, NV 89128 |
| **Joint Debtor**<br>CONNIE MAY SCHERF<br>7075 W. GOWAN RD. #1067<br>LAS VEGAS, NV 89129 | **Chapter 13 Trustee**<br>RICK A. YARNALL<br>701 BRIDGER AVE., #820<br>LAS VEGAS, NV 89101 |

\_xx\_\_\_(By First Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

_____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the Eastern District of California

\_\_xx\_(Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on May 29, 2018 at Santa Ana, California

/*s / Jeremy Romero*
Jeremy Romero